IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THOMAS WARE, LANCE WYSS, CHRISTIAN ZARAGOZA, JEFFREY FITE, DAVID SCOTT, and JOSHUA CALLIS, on behalf of themselves and all similarly situated individuals, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:11-cv-411 Judge Trauger |
| T-MOBILE USA | ) ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is the Motion for Expedited Court-Supervised Notice to Prospective Class Members Pursuant to 29 U.S.C. § 216(b) filed by the plaintiffs (Docket No. 36), to which the defendant has filed a response (Docket No. 45), and in support of which the plaintiffs have filed a reply (Docket No. 52). For the reasons discussed herein, the plaintiffs' motion will be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

On May 2, 2011, the plaintiffs filed their Complaint in this case.[1] The six named plaintiffs are former employees of defendant T-Mobile USA ("T-Mobile"). T-Mobile provides wireless voice, messaging, and data services nationwide. It operates 24 call centers in 16 states,

---

[1] Unless otherwise noted, the facts are drawn from the parties' filings and related exhibits.

1

which states are: Alabama, Colorado, Florida, Georgia, Indiana, Kansas, Maine, Missouri, New Mexico, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Washington. Five of the named plaintiffs[2] worked as customer service representatives ("CSRs") at T-Mobile's call center in Nashville, Tennessee.[3] The remaining named plaintiff worked as a technical support representative ("TSR") at T-Mobile's call center in Colorado Springs, Colorado.[4]

Hourly employees at T-Mobile's call centers clock in and out by means of their workstation computers. The plaintiffs allege that, before clocking in to work, employees had to spend a certain amount of uncompensated time bringing up their computers and performing other preparatory work. They also allege that the defendant underpaid employees by failing to include certain required payments in the regular rate of pay when it calculated overtime. The plaintiffs claim that, by failing to compensate employees for pre-shift work and work performed during unpaid meal breaks and by miscalculating the regular rate of pay, T-Mobile violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* The plaintiffs seek to represent a class of all non-exempt current and former employees employed at any time since May 2, 2008 at T-Mobile's call centers nationwide who worked as CSRs, as TSRs, or in related occupations where employees handle calls with the public or vendors.

In addition to seeking authorization from the court for this case to proceed as a collective

---

[2] These plaintiffs include Thomas Ware, Lance Wyss, Christian Zaragoza, Jeffrey Fite, and Joshua Callis.

[3] Thomas Ware was also employed as a CSR at T-Mobile's call center in Colorado Springs, Colorado from January 2007 to September 2007.

[4] This plaintiff, David Scott, signed a form consenting to join the case as a plaintiff, which was filed on September 28, 2011. (Docket No. 48.)

action under the FLSA, the plaintiffs filed proposed notice and consent forms that would be provided to potential plaintiffs to give them the opportunity to learn of this litigation and to opt-into it. The plaintiffs seek an Order directing: (1) the defendant to provide the names, mailing addresses, and any known e-mail addresses of all non-exempt current and former employees who have been employed at any time since May 2, 2008 at T-Mobile's call centers nationwide who worked as CSRs, as TSRs, or in related occupations where employees handle calls with the public or vendors; (2) the plaintiffs' counsel to notify such employees; (3) that all such employees shall have 120 days to opt in to this action from the date the defendant provides the requested names and addresses to the plaintiffs' counsel; and (4) that the statute of limitations be tolled until the close of the above-referenced notice period.

**ANALYSIS**

In seeking court-ordered "authorization" to proceed, at this early stage, as a collective action, the plaintiffs are seeking what is generally known as "conditional certification" of a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA.

**I.       FLSA Certification Standard**

Recognizing that the value of an individual claim might be small and not otherwise economically sensible to pursue, the FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under

Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009). Once a collective action is certified, however, employees seeking to join the class must affirmatively opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584. In *O'Brien*, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D.

4

Tenn. Apr. 10, 2008). At that point, "'the certification is conditional and by no means final.' The plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *Id.* at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in . . . certification.'" *Id.* (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Shabazz*, 2008 WL 1730318, at *3 (stating that plaintiffs "must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]" (quotation marks omitted)). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583; *Shabazz*, 2008 WL 1730318, at *3 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547. The plaintiffs' motion in the present case comes to the court at the first stage of the two-phase inquiry.

**II.     Whether Other Employees are Similarly Situated to the Named Plaintiffs**

The parties dispute whether the plaintiffs have sufficiently shown that they are similarly situated to a class of other employees. In support of their motion, the plaintiffs have submitted declarations from themselves and one other T-Mobile employee, each stating that the defendant failed to compensate them for work performed prior to their shifts and during their unpaid meal breaks and miscalculated the regular rate of overtime pay. In response, T-Mobile argues that the plaintiffs have not shown that there is sufficient interest among members of the putative class in joining this litigation. (*See* Docket No. 45, at 12-13.) It also asserts that the recent decision of the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. --- , 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) trumps the Sixth Circuit's *O'Brien* decision and requires the court to recognize the individualized liability determinations that make conditional certification inappropriate. (*Id.* at 16-18.)

The plaintiffs' supporting declarations provide evidence that T-Mobile employees at the Nashville and Colorado Springs call centers were not compensated for all work performed. They also provide evidence that the defendant miscalculated the regular rate of pay for purposes of calculating overtime by failing to include various types of compensation paid to the plaintiffs in addition to their base salary. Each declaration contains the same basic factual allegations.

For example, the declaration of plaintiff Thomas Ware, who worked as a CSR at T-Mobile's Nashville call center from September 2007 to November 2010, states that he generally started to work 15 minutes before the beginning of his shift and began his day by pulling up the call center's computer system, which included several different computer programs, so that he

could log into the system and review e-mails. (Docket No. 38, at 15.) It took approximately 8-12 minutes for him to pull up the various computer programs, and, while doing so, he would read memoranda and e-mails concerning changes and updates to T-Mobile policies.[5] (*Id.*) Ware claims that it was necessary for him to perform these pre-shift tasks in order to do his job. (*Id.*) According to Ware, CSRs were not allowed to clock in to work until five minutes before the start of their shifts. (*Id.*) He states that, if he arrived to work at the beginning of his shift, he would not have been able to pull up the necessary computer programs by that time, and, therefore, would have been considered late to work by T-Mobile. (*Id.* at 16.) He also would not have had enough time to read the company memoranda and e-mails before receiving calls from customers. (*Id.*) Ware adds that, while the defendant designated the first 9 minutes of his shift as "stread time," during which he was supposed to review company memoranda and e-mails, his immediate supervisor often instead required him to attend a meeting to prepare CSRs for the day ahead. (*Id.*) On such occasions, Ware performed the "stread time" tasks either before his shift or during his lunch break. (*Id.*)

In addition to performing pre-shift work, Ware also claims that he spent 5-7 minutes during his unpaid lunch break pulling the computer system back up before he clocked back in to

---

[5] The declarations vary as to the number of memoranda and e-mails employees received daily. Ware states that he received between 5-10 memos and e-mails daily. (Docket No. 38, at 15.) The declarations of plaintiffs Lance Wyss, Christian Zaragoza, Jeffrey Fite, and Joshua Callis contain the same allegation. (Id. at 2, 8, 22, and 29.) The declaration of plaintiff David Scott states that there were between 20 and 25 memos and e-mails daily, while the declaration of Thomas Holder claims there were between 10 and 15. (Docket No. 52, Ex. 1 at 2; Docket No. 52, Ex. 2 at 2.) At any rate, the evidence shows that employees at the Nashville and Colorado Springs call centers received several daily memoranda and emails, which they reviewed prior to beginning their shifts.

work. (*Id.* at 16.) According to Ware, CSRs were required to resume taking calls from customers upon the conclusion of their lunch breaks. (*Id.* at 17.) Thus, if he returned to work at the end of his lunch break, he would have been considered late by T-Mobile, because he would not have been ready to take calls from customers until he pulled up the computer system and clocked in. (*Id.*)

Ware's declaration further states that, while he was eligible to receive several bonus and incentive payments on top of his base salary as part of his compensation, none of those additional payments was included in the rate of pay at which the defendant paid him overtime. (*Id.* at 17-18.) He added that he worked over 40 hours per week one to two times each month (*Id.* at 18.)

The declarations of plaintiffs Lance Wyss, Christian Zaragoza, Jeffrey Fite, and Joshua Callis all contain nearly identical allegations. All of these plaintiffs were formerly employed at the Nashville call center as CSRs.[6] (*See* Docket No. 38.) Plaintiff David Scott, who worked as a TSR at T-Mobile's Colorado Springs call center from August 2006 to February 2009, also makes the same basic allegations. (Docket No. 52, Ex. 2.) In his declaration, Scott adds that he was frequently encouraged by his supervisors to review company memoranda prior to clocking in. (*Id.* at 2.) Moreover, with respect to the defendant's calculation of his overtime pay, Scott states that he received the bonus and incentive payments that were not included in his overtime payment during the weeks he worked over 40 hours. (*Id.* at 5.) He further states that he

---

[6] Lance Wyss worked at the call center from January 2004 to January 2011. Christian Zaragoza worked from February 2008 to September 2010. Jeffrey Fite worked from February 2008 to February 2011. Joshua Callis worked from January 2008 to January 2011.

frequently worked in excess of 40 hours per week while he was employed. (*Id.*) The plaintiffs also offer the declaration of Thomas Holder, a former T-Mobile employee who worked at the Nashville call center from October 2001 to April 2010. (*See* Docket 52, Ex. 1.) While it is unclear whether Holder worked as a CSR or TSR, his and Scott's declarations nearly mirror one another.[7]

The showing that the plaintiffs must make at the conditional certification stage is "modest," *see Comer*, 454 F.3d at 457, and the outcome largely depends on the plaintiffs' ability to demonstrate that the claims of the class would proceed under common, focused theories of statutory liability. *See O'Brien*, 575 F.3d at 585. Through their declarations, the plaintiffs have offered such common, specific theories here. Indeed, all potential plaintiffs at the Nashville and Colorado Springs call centers were effectively required to perform uncompensated tasks before clocking in to work. In addition, the defendant miscalculated the regular rate of pay for purposes of calculating overtime by failing to include various types of compensation paid to the potential plaintiffs in addition to their base salary. By invoking these common theories of T-Mobile's FLSA violations, the plaintiffs have met the "low bar" of conditional certification with respect to persons who work or have worked at T-Mobile's Nashville and Colorado Springs call centers.

While the plaintiffs have made the modest showing required for conditional certification of a class of current and former employees at T-Mobile's Nashville and Colorado Springs call centers, they have not made a similar showing with respect to current and former employees at

---

[7] Although Holder states that he was employed as a CSR (Docket No. 52, Ex. 1, at 1-3), he also indicates in other portions of his declaration that he worked as a TSR. (*See id.*, at 3.)

T-Mobile's other call centers nationwide. The plaintiffs have not worked at any other T-Mobile call center outside of Nashville or Colorado Springs and have not presented a declaration from any current or former employee who worked at any such facility. Accordingly, the plaintiffs' request that current and former T-Mobile employees who worked at call centers nationwide be included in the conditional class and receive notice will be denied. *See Shabazz*, 2008 WL 1730318, at *5 (denying, without prejudice, plaintiffs' request to extend conditional class of hourly employees beyond defendant's Nashville call center to include employees that worked at its Houston call center, where plaintiffs failed to produce a declaration from any current or former employee who worked at the Houston call center).[8]

---

[8] The plaintiffs argue that documents produced by the defendant in its opposition to the plaintiffs' motion support conditional certification of a nationwide class. In particular, they assert that a section in T-Mobile's Employee Handbook demonstrates that the defendant maintains a national policy that violates the FLSA with respect to how it calculates the regular rate of pay for purposes of calculating overtime. (Docket No. 52, at 5-6.) The specific section, entitled "Overtime," states, in pertinent part:

> Non-exempt employees who work overtime must receive overtime pay, which is calculated in accordance with applicable laws. Non-exempt employees receive one-and-one-half times their *regular hourly rate of pay* for all hours worked over 40 hours per workweek unless otherwise required by law.

(Docket No. 45, Ex. C, at 11, 23.) (emphasis added)

The FLSA requires that an employee who works overtime must receive overtime compensation from his employer "at a rate not less than one and one-half times the *regular rate* at which he is employed." 29 U.S.C. § 207(a) (emphasis added). The plaintiffs argue that the quoted language from T-Mobile's Employee Handbook shows that T-Mobile calculates overtime based on an employee's hourly, as opposed to regular, rate of pay in contravention of the FLSA. The court does not agree. The quoted language twice states that T-Mobile shall calculate overtime pay in accordance with applicable laws, which can reasonably be interpreted to include the FLSA requirements concerning the calculation of overtime. It is not an unreasonable stretch

In opposing conditional certification, T-Mobile argues that the plaintiffs have not shown sufficient interest among members in the putative class in joining the litigation. (Docket No. 45, at 12-13.) Although the defendant cites a number of cases applying a requirement of sufficient interest, including two from district courts in this circuit, *see Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2008 WL 6653632, at *6 (W.D. Tenn. Sept. 16, 2008); *Arrington v. Michigan Bell Tel. Co.*, No. 10-10975, 2011 WL 3319691, at *5 (E.D. Mich. Aug. 1, 2011), there is no controlling precedent in the Sixth Circuit regarding this specific issue. *See Martin v. Psalms, Inc.*, No. 2:10-cv-02532-STA-dkv, 2011 WL 2882387, at *8 (W.D. Tenn. July 15, 2011) ("From this court's review of Sixth Circuit precedent, the Court finds that the Sixth Circuit has neither required such a showing, nor held that such a showing is not required."). Addressing the sufficient interest argument, one district court outside this circuit noted that the argument "puts the cart before the horse." *Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777, 780 (N.D. Ill. 2007). It added that:

> [T]he logic behind defendants' proposed procedure - requiring [the plaintiff] to show that others want to join in order to send them notice asking if they want to join - escapes the Court. Requiring a plaintiff to make an advance showing that others want to join would undermine the 'broad remedial goal' of the FLSA.

*Id*. (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989). The court finds this reasoning persuasive.

---

to interpret this language to mean that various types of compensation paid to the plaintiffs on top of their base salary are included in T-Mobile's computation of overtime pay. Certainly this is too thin a thread upon which to base nationwide certification.

11

However, even if a showing of sufficient interest were required, the plaintiffs have demonstrated that there is sufficient interest in the present case. In *Frye*, the district court, relying on a decision from the Eleventh Circuit, noted that "[n]o specific minimum number of opt-in plaintiffs is required to establish a showing of sufficient interest. Rather, the question is simply whether 'there are other employees ... who desire to 'opt-in.'" *Frye*, 2008 WL 6653632, at *6 (quoting *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991). Here, the plaintiffs have shown that at least one other former employee, David Scott, has opted into this action since the defendant raised its lack of interest argument. Given the fairly lenient standard for conditional certification, *see Comer*, 454 F.3d at 547, the court finds that the plaintiffs have shown there is sufficient interest to conditionally certify a class. *See Psalms, Inc.*, 2011 WL 2882387, at *8 ("The fact that one other employee of Defendant has opted-into this collective action, is enough, at this stage in the litigation, for this Court to find that there is sufficient interest to conditionally certify a class and permit court-supervised notice.").

The defendant next asserts that the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, ---U.S.---, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), trumps the Sixth Circuit's *O'Brien* decision and compels the court to recognize the individualized nature of the plaintiffs' FLSA claims.[9] (Docket No. 45, at 16-18.) The court does not agree and finds that *Dukes* does

---

[9] The defendant also argues, among other things, that the Sixth Circuit's statement in *O'Brien* that employees may be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct," 575 F.3d at 585, is *dicta*. This court disagrees and will not so lightly disregard the clear statements made by the Sixth Circuit in *O'Brien*. *See Benson v. Asurion Corp.*, No. 3:10-cv-526, 2010 WL 4922704, at *4, n.6 (M.D. Tenn. Nov. 29, 2010) (refusing to treat as *dicta*, the Sixth Circuit's statement in *O'Brien* that "[s]howing a 'unified

12

not affect its analysis of whether the plaintiffs are similarly situated to employees in the putative class under the FLSA. In *Dukes*, the Supreme Court declined class certification under Federal Rule of Civil Procedure 23. This case, however, involves a collective action brought under the FLSA where, unlike a Rule 23 class action lawsuit, employees seeking to join the class are statutorily required to affirmatively opt-in. 29 U.S.C. § 216(b). The Sixth Circuit has distinguished Rule 23's more stringent criteria for class certification from the FLSA's requirement that opt-in plaintiffs only be similarly situated and declined to apply those criteria to FLSA claims. *See O'Brien*, 575 F.3d at 584 ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *see also Creely v. HCR Manorcare, Inc.*, Nos. 3:09 cv 2879, 3:10 cv 417, 3:10 cv 2200, 2011 WL 3794142, at *1-2 (N.D. Ohio July 1, 2011) (noting the same distinction drawn by the Sixth Circuit in *O'Brien* and concluding that *Dukes'* holdings did not implicate the FLSA collective action pending before the court). Again, under *O'Brien,* employees may be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. The Supreme Court's decision in *Dukes* does not change that result.[10]

---

policy' of violations is not required" to support certification of a collective action).

[10] The defendant also contends that *Dukes* requires the court to recognize the individualized nature of the plaintiffs' FLSA claims. As the court has already concluded that *Dukes* does not impact its FLSA analysis, it need not consider this argument. In any event, this court has previously recognized that arguments concerning the individualized nature of the plaintiffs' claims "are more appropriately raised at the second stage, or decertification stage, of a collective action." *Benson*, 2010 WL 4922704, at *5 (quoting *Shabazz*, 2008 WL 1730318, at *3).

Accordingly, the court will conditionally certify a class of all current and former employees who worked as Customer Service Representatives, as Technical Support Representatives, or in related occupations at T-Mobile USA's call centers in Nashville, Tennessee and Colorado Springs, Colorado since May 2, 2008.

To facilitate class notice, the court will order the defendant to provide the plaintiffs with the names and last known addresses of these employees. The plaintiffs have submitted proposed notice and consent forms. (Docket No. 52, Exs. 3, 4.) The defendant has asserted that the plaintiffs' proposed notice is deficient in material respects, although, with the exception of objecting to the 120-day opt-in period as unreasonably long, it has failed to otherwise describe how the proposed notice is defective. (*See* Docket No. 45, at 25, n.46.) The defendant's brief also does not address the plaintiffs' proposed consent form. Thus, the court will order the parties to confer and attempt to submit agreed-upon notice and consent forms within 20 days of the date of the accompanying Order. If the parties cannot agree, the defendant shall file its specific objections to the plaintiffs' proposed forms by the same deadline.

Finally, the court finds no reason to rule on the undeveloped statute of limitations/tolling issue. If, at a later stage in this proceeding, the defendant advances an argument that certain claims are barred by the relevant statute of limitations, the plaintiff may (of course) advance an argument that equitable tolling should apply.

## **CONCLUSION**

For all of the reasons discussed herein, the plaintiffs' Motion for Expedited Court-Supervised Notice to Prospective Class Members Pursuant to 29 U.S.C. § 216(b) is **GRANTED** in part and **DENIED** in part. The plaintiffs' motion will be granted with respect to all current

and former employees who worked as Customer Service Representatives, as Technical Support Representatives, or in related occupations at T-Mobile USA's call centers in Nashville, Tennessee and Colorado Springs, Colorado since May 2, 2008. The motion will be denied with respect to such employees at other T-Mobile call centers nationwide. However, this denial will be without prejudice to the plaintiffs' right to seek nationwide class certification and notice should the evidence obtained in discovery warrant such a request.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge